United States District Court
Southern District of Texas
**ENTERED**
December 01, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |   |
|---|---|---|
| IN RE: MV/MS ADALYN | § § § § § § § § § | CIVIL ACTION NO. H-25-1984 |

**MEMORANDUM AND OPINION**

In November 2023, the M/V MS ADALYN, a workboat carrying eight individuals and its captain, ran aground and hit a steel pipe, injuring those on board. Those individuals sued the petitioners, Hunter Marine Group, LLC and Michael Quain Neward Pittman, who seek relief under the Limitation of Liability Act of 1851. The question is whether the ADALYN is a "covered small passenger vessel" excluded from the Act's limitation of liability. Based on the pleadings, the motion, the record, the arguments of counsel, and the applicable law, the court concludes that the ADALYN is a covered small passenger vessel. The claimants' motions for summary judgment and to lift the stay, (Docket Entry Nos. 25, 40), are granted. The petitioners' motion for summary judgment, (Docket Entry No. 45), is denied. The court separately enters a final judgment dismissing the petition and lifting the stay. The reasons for these rulings are set out below.

**I.      Background**

The petitioners, Hunter Marine Group, LLC and Michael Quain Neward Pittman, own the ADALYN (Registration No. AL1279RA), a 38-foot aluminum-hulled commercial workboat weighing less than 100 gross tons. Pittman is the bareboat owner and registered owner of the vessel, and Hunter Marine is the bareboat charterer and owner *pro hac vice* of the vessel, all under

a Bareboot Charter Agreement between Pittman and Hunter Marine. (Docket Entry No. 1 ¶ 3). Under the Charter Agreement, Hunter Marine was responsible for, among other things, manning, providing equipment, maintenance, and repairs for the vessel, and operating the vessel. (*Id.* ¶ 4).

Hunter Marine and Encore Dredging Partners, LLC (d/b/a Inland Dredging Co., LLC) entered into a Contractor Agreement under which Hunter Marine agreed to "provide equipment and perform services" to meet Encore's needs. (*See* Docket Entry No. 47 at 2). The "equipment" consisted of the ADALYN, a commercial workboat, and the JOHN D, a tug. (*Id.*). The ADALYN was available for Encore's use 24/7. "Encore paid a flat rate of $2,000 per day, regardless of how (or whether) the vessel was used," in addition to fuel and charter hire, and regardless of the number of trips made, who or what was carried, or how many tasks the vessel was used for each day. (*Id.*). Hunter Marine provided the JOHN D to Encore on similar terms. (*Id.*).

In November 2024, Encore was performing maintenance dredging on the Alabama River and using the vessels in that work. On November 3, the ADALYN began traveling from the M/V DREDGE RANGER, which was working on the Alabama River near Monroeville, Alabama. After leaving the M/V DREDGE RANGER's location, the ADALYN proceeded north on the Alabama River, toward a landing just north of the Highway 84 Bridge crossing. (Docket Entry No. 1 ¶ 11). The ADALYN carried eight Encore employees. (*Id.* ¶ 12).

At approximately 18:30 local time, the ADALYN encountered an unexpected shoaling and shallow water south of the Highway 84 Bridge, which caused the vessel to run aground. It hit a stationary steel pipe. (*Id.* ¶ 13). The petitioners allege that under regular water conditions, the steel pipe would have anchored a floating channel marker next to a wing dam. (*Id.*). The petitioners allege that when the accident occurred, the channel marker was instead laying sideways in the sand due to an apparent rapid drop in the water levels earlier in the day. (*Id.*). When the

ADALYN hit the pipe, it came to an abrupt stop with enough force to damage its aluminum hull plating, as well as some of its navigational equipment and electronics. (*Id.* ¶ 14). Employees of Encore aboard the ADALYN reported injuries and were transported for local emergency medical care. (*Id.* ¶ 15).

In December 2024, the Encore employees who had been on board the ADALYN when the accident occurred—the claimants in this action—filed state-law personal injury actions in state court against Hunter Marine and Encore. (*See* Docket Entry No. 40 at 2). In May 2025, Hunter Marine and Pittman filed this action under the Limitation of Liability Act of 1851. (Docket Entry No. 1). This court stayed the state-court proceedings. (Docket Entry Nos. 13, 18). The claimants have filed a motion to lift the stay, which the petitioners oppose. (Docket Entry Nos. 16, 17, 22, 25, 29). After a scheduling conference, the parties cross-moved for summary judgment, and those motions are ripe for review. (Docket Entry Nos. 40, 44, 47).

**II.     The Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue of fact is genuine if a reasonable trier of fact could return judgment for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is material if it "might affect the outcome of the suit under the governing law" and is not "irrelevant or unnecessary." *Id.* The court must construe all the evidence and draw all reasonable inferences from the evidence in the light most favorable to the non-moving party. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If the non-moving party prevails as a matter of law after so construing the record, or if reasonable minds could differ on

the import of the evidence presented, the court must deny the motion for summary judgment. *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020).

**III.    Analysis**

Under the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, "a shipowner can limit its liability for damages caused by an incident to the value of the vessel at the end of its voyage, plus any pending freight as long as the shipowner had no privity or knowledge of any unseaworthy condition or negligent act that was a proximate cause of the incident." *In re Graham Offshore Tugs LLC*, 752 F. Supp. 3d 619, 622 (E.D. Tex. 2024) (citing *SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458, 472 (5th Cir. 2022)); *see* 46 U.S.C. § 30505(a)–(b). Under the Act, federal courts have exclusive jurisdiction to determine whether a shipowner is entitled to limited liability. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 443–45 (2001); *In re N&W Marine Towing, L.L.C.*, 31 F.4th 968, 971 (5th Cir. 2022).

The Limitation of Liability Act applies to "seagoing vessels and vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters," but does not apply to "covered small passenger vessels." 46 U.S.C. § 30502(a)–(b). The Act defines a "covered small passenger vessel" as "a small passenger vessel . . .that is" (i) "not a wing-in-ground craft; and" (ii) "carrying" (I) "not more than 49 passengers on an overnight domestic voyage; and (II) not more than 150 passengers on any voyage that is not an overnight domestic voyage." *Id.* § 30501(1)(A). The Act defines a "small passenger vessel," as follows:

> "small passenger vessel" means a wing-in-ground craft, regardless of tonnage, carrying at least one passenger for hire, and a vessel of less than 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title—
>
>> (A) carrying more than 6 passengers, including at least one passenger for hire;

4

>    (B) that is chartered with the crew provided or specified by the owner or the owner's representative and carrying more than 6 passengers;
>
>    (C) that is chartered with no crew provided or specified by the owner or the owner's representative and carrying more than 12 passengers;
>
>    (D) that is a submersible vessel carrying at least one passenger for hire; or
>
>    (E) that is a ferry carrying more than 6 passengers.

*Id.* § 2101(47).

The Act does not limit the ADALYN's liability if the vessel meets both statutory definitions. The petitioners make two arguments for why the ADALYN does not do so. First, they argue that "small passenger vessels" must be both "a wing-in-ground craft . . . and a vessel of less than 100 gross tons." (Docket Entry No. 45-1 at 11). Second, they argue that the claimants are neither passengers nor passengers for hire, so the vessel does not satisfy § 2101(47)(A). (*Id.* at 19–22). The parties do not dispute that the ADALYN satisfies the other aspects of the statute's definition of "small passenger vehicle" and the additional requirements of a "covered small passenger vehicle."

The statutory definition of "small passenger vessels" is disjunctive, not conjunctive. The Act's definition does not cover only wing-in-ground crafts weighing less than 100 gross tons. Although the definition uses "and" in between the wing-in-ground and 100-gross-tons criteria, the statute places the article "a" before each vessel description and uses a comma to separate them. This tells the reader that the operative verb in the definition, "means," is distributive. A recent Supreme Court case explains the concept:

> [A]n introductory phrase (here, "does not have") may apply to, or modify, several terms coming after it, one by one by one. Suppose a person says after visiting a bookstore, "I bought a novel, a memoir, and a travel guide." That is just a more efficient way of saying "I bought a novel, bought a memoir, and bought a travel guide." The verb in the sentence carries over—some grammarians use the term

5

"distribut[es]"—to every item on the ensuing list. That practice is pervasive, indeed inescapable, in every kind of speech and writing. Consider this, perhaps half-remembered line from childhood: "On Saturday he ate through one piece of chocolate cake, one ice-cream cone, one pickle, one slice of Swiss cheese, one slice of salami, one lollipop, one piece of cherry pie, one sausage, one cupcake, and one slice of watermelon." The introductory words "ate through" apply independently and equivalently to each of the ten foodstuffs that follow. Or if that example seems too trifling, take a couple from the Constitution. Article III provides that "[t]he judicial Power shall extend to all Cases . . . arising under this Constitution, the Laws of the United States, and Treaties." That statement means—but says more concisely—that the judicial power extends to cases arising under the Constitution; extends to cases arising under federal law; and extends to cases arising under treaties. . . . So again, the verb phrase operates on each term seriatim, not on the combination of the three.

*Pulsifer v. United States*, 601 U.S. 124, 134–35 (2024) (internal citations omitted). Applying that principle here, the statute is most sensibly read to define a "small passenger vessel" to "mean[] a wing-in-ground craft, regardless of tonnage, carrying at least one passenger for hire" or to "mean[] . . a vessel of less than 100 gross tons." 46 U.S.C. § 2101(47).

Other courts have adopted this reading of the Act. *See, e.g.*, *In re Texas Petroleum Inv. Co.*, No. 23-cv-1931, 2024 WL 4107680, at *2 (E.D. La. Sept. 6, 2024); *In re Freedom Marine Sales LLC*, No. 8:23-cv-2890, 2024 WL 2874817, at *3 (M.D. Fla. May 7, 2024), *report and recommendation adopted sub nom. In the Matter of Petition of Freedom Marine Sales LLC*, No. 8:23-cv-2890, 2024 WL 4201970 (M.D. Fla. July 23, 2024); *In re Koch*, No. 8:25-cv-300, 2025 WL 2774405, at *6 (M.D. Fla. Sept. 12, 2025), *report and recommendation adopted*, No. 8:25-cv-300, 2025 WL 2771064 (M.D. Fla. Sept. 29, 2025); *In re John Cornell*, 8:24-cv-900, 2025 WL 3192187, at *6 (M.D. Fla. Nov. 14, 2025).

There is no dispute that the ADALYN is a "vessel of less than 100 gross tons." The remaining question is whether the vessel satisfied § 2101(47)(A). It did. The ADALYN carried "more than 6 passengers, including at least one passenger for hire." A "passenger" is "an individual carried on the vessel except . . . a member of the crew engaged in the business of the

6

vessel who has not contributed consideration for carriage and who is paid for on board services." 46 U.S.C. § 2101(29)(A)(iii).  A "passenger for hire" is "a passenger for whom consideration is contributed as a condition of carriage on the vessel, whether directly or indirectly flowing to the owner, charterer, operator, agent, or any other person having an interest in the vessel."  46 U.S.C. § 2101(30).  Consideration is "an economic benefit . . . accruing to an individual, person, or entity, but not including a voluntary sharing of the actual expenses of the voyage, by monetary contribution or donation of fuel, food, beverage, or other supplies."  *Id.* § 2101(5).

Based on these definitions, the question is whether the claimants, directly or indirectly, paid Hunter Marine to travel on the ADALYN.  *See Shawler v. Ergon Asphalt & Emulsions, Inc.*, No. 15-2599, 2016 WL 1019121, at *8 (E.D. La. Mar. 15, 2016) (holding that "'small passenger vessel' status is determined by asking if any passenger, whether directly or indirectly, contributed consideration as a condition of his or her carriage on the vessel"), *aff'd sub nom. Shawler v. Big Valley, L.L.C.*, 728 F. App'x 391 (5th Cir. 2018).  The parties do not dispute that Encore paid Hunter Marine to use the ADALYN, including by having it carrying Encore employees.  Without that consideration, the claimants would not have been on the vessel when the accident occurred.

The petitioners offer several arguments in response, none persuasive.  First, they argue that the claimants did not contribute consideration for carriage on the vessel because Encore paid a flat, daily rate for its usage that was invoiced regardless of whether or how many Encore employees were carried. (Docket Entry No. 45-1 at 19–20).  But the statute does not require that a passenger's consideration be marginal; it just requires that consideration—any consideration—be a condition for carriage.  To illustrate, consider a patron who buys a season pass to Disney World or a basketball fan who purchases season tickets to the Houston Rockets.  The individual does not have to pay additional consideration for each entry to the theme park or the Toyota Center.  But there is

7

little question that the patron is able to visit Magic Kingdom or watch the Rockets only because he or she delivered "an economic benefit" to the Walt Disney Corporation or the Rockets organization. The flat, daily fee—"an economic benefit"—was a condition for the claimants' carriage on the ADELYN, making them "passengers for hire."

Second, the petitioners argue that the claimants are not passengers, but instead crew. (Docket Entry No. 45-1 at 20–23). The parties marshal various facts and dispute whether the claimants are in fact crew. But this dispute is immaterial. Under the statute, a crew member who has "contributed consideration for carriage" is also a passenger. 46 U.S.C. § 2101(29)(A)(iii) (excepting from the definition of passenger "a member of the crew engaged in the business of the vessel who has not contributed consideration for carriage and who is paid for on board services"). Even if the claimants were "crew," they would not satisfy the remainder of the exception precisely because they are passengers for hire. Because the claimants indirectly paid consideration for carriage aboard the ADALYN, they are "passengers for hire," which means they are "passengers" regardless of whether or not they are crew.

The conclusion is that at the time of the accident, the ADALYN was a "covered small passenger vessel." The Act's limitation of liability does not apply.

As a final request, the petitioners argue that this court should not dismiss the case because Rule F should apply, including the mechanism that aggregates each claim into a single forum. (Docket Entry No. 45-1 at 23–25). The petitioners argue that because the Act does not except "covered small passenger vessels" from § 30526(b), Rule F applies. *See* 46 U.S.C. § 30502(b) ("This chapter (except for section 30526) shall not apply to covered small passenger vessels."). But the text does not support the petitioners' argument, and the Act's purpose does not conflict with the statutory scheme. The petitioners offer no textual basis to apply Rule F and its concursus

8

mechanism. Section 30526(b) limits vessel owners' ability to shorten the time for claimants to provide notice of their claims or file suit. *See id.* § 30526(b)(1)–(2). Congress chose to apply these discrete restrictions, rather than Rule F, to "covered small passenger vessels."

The choice against applying Rule F and its concursus mechanism is consistent with the criteria for "covered small passenger vessels." The Act states that "covered small passenger vessels" carry "not more than 49 passengers on an overnight domestic voyage" and "not more than 150 passengers on any voyage that is not an overnight domestic voyage." 46 U.S.C. § 30501(1)(A)(ii)(I)–(II). The limit on the number of passengers is a limit on the number of plaintiffs that an owner of a "covered small passenger vessel" may face in state court, without the application of the Rule F procedures. The Act specifies whether and how to limit liability for owners of "covered small passenger vessels." On the facts presented in the record, the Act does not apply to limit the ADALYN's liability.

## IV.    Conclusion

The claimants' motions for summary judgment and to lift the stay, (Docket Entry Nos. 25, 40), are granted. The petitioners' motion for summary judgment, (Docket Entry No. 45), is denied. An order dismissing the petition and lifting the stay is separately entered.

SIGNED on December 1, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge